**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HARRY PLYLER,
Plaintiff-Appellant,

and

GARY WAYNE NELSON; LES
WILLIAMS; GARY SLEZAK,
Plaintiffs,

v.

MICHAEL MOORE, Director, South
Carolina Department of Corrections,
Defendant-Appellee,

and                                                            No. 96-6884

UNITED STATES OF AMERICA,
Intervenor,

and

WILLIAM D. LEEKE; BOARD OF
CORRECTIONS OF THE STATE OF
VIRGINIA,
Defendants.

THE LEGAL AID SOCIETY OF THE CITY
OF NEW YORK; THE YOUTH LAW
CENTER; HUMAN RIGHTS WATCH;
NATIONAL WOMEN'S LAW CENTER,
Amici Curiae.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
C. Weston Houck, Chief District Judge.
(CA-82-876-2)

Argued: September 26, 1996

Decided: November 14, 1996

Before WILKINS, WILLIAMS, and MOTZ, Circuit Judges.

_____

Affirmed by published opinion. Judge Wilkins wrote the opinion, in which Judge Williams and Judge Motz joined.

_____

**COUNSEL**

**ARGUED:** W. Gaston Fairey, FAIREY, PARISE & MILLS, P.A., Columbia, South Carolina, for Appellant. Kenneth Paul Woodington, Senior Assistant Attorney General, Columbia, South Carolina, for Appellee. Robert Mark Loeb, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenor. **ON BRIEF:** Rochelle Romosca McKim, FAIREY, PARISE & MILLS, P.A., Columbia, South Carolina, for Appellant. Charles Molony Condon, Attorney General, Treva Ashworth, Deputy Attorney General, Reginald I. Lloyd, Assistant Attorney General, Columbia, South Carolina; Larry C. Batson, General Counsel, SOUTH CAROLINA DEPARTMENT OF CORRECTIONS, Columbia, South Carolina, for Appellee. Frank W. Hunger, Assistant Attorney General, Margaret B. Seymour, United States Attorney, Barbara L. Herwig, Appellate Staff, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Intervenor. Daniel L. Greenberg, John Boston, Sarah Kerr, Dori A. Lewis, Marta Nelson, Prisoners' Rights Project, THE LEGAL AID SOCIETY, New York, New York; Mark Soler, YOUTH LAW CENTER, Washington, D.C.; Kenneth Roth, Juan Mendez, Joanne Mariner, Regan Ralph, HUMAN RIGHTS WATCH, New York, New York; Deborah Brake, Brenda V. Smith, Joanna Grossman, NATIONAL WOMEN'S LAW CENTER, Washington, D.C., for Amici Curiae.

_____

2

**OPINION**

WILKINS, Circuit Judge:

A class of South Carolina prison inmates (the Inmates) appeals an order of the district court terminating, pursuant to 18 U.S.C.A. § 3626(b)(2) (West Supp. 1996), as amended by Prison Litigation Reform Act, Pub. L. No. 104-134, § 802(a), 110 Stat. 1321, 1321-68 (1996), a consent decree pertaining to conditions in South Carolina prisons. The Inmates principally maintain that to the extent the district court correctly interpreted § 3626(b)(2) to require termination of the consent decree, the provision is unconstitutional in that it violates the separation-of-powers doctrine, denies them equal protection of the laws, and deprives them of property without due process of law. Concluding that none of the Inmates' arguments have merit, we affirm.

I.

Because the lengthy history of this litigation is largely irrelevant to the questions we address today, we recount it only briefly. This action was initiated in 1982 pursuant to 42 U.S.C.A. § 1983 (West 1994), challenging various conditions of confinement in South Carolina prisons. The Director of the South Carolina Department of Corrections and the members of the South Carolina Board of Corrections (collectively, "the State") were named as defendants to the suit. The parties subsequently agreed to the terms of a consent decree, and the district court approved the settlement in March 1986. Although the consent decree is primarily concerned with measures to be taken to alleviate overcrowding, it also contains detailed provisions relating to, inter alia, health services, educational programs, vocational training, food service, and visitation. Additionally, the decree provides for continued supervision by the district court, stipulating that "[t]he Court shall retain jurisdiction in this case to ensure that the Decree and all plans incorporated herein are fully implemented." J.A. 79. Since approval of the consent decree, the State has availed itself of the continuing supervisory jurisdiction of the district court on three occasions to request modification of the decree due to unanticipated increases in the prison population. See Plyler v. Evatt, 924 F.2d 1321, 1323 (4th Cir. 1991); Plyler v. Evatt, 846 F.2d 208, 211 (4th Cir.), cert. denied,

3

488 U.S. 897 (1988); <u>Plyler v. Leeke</u>, No. 86-7654 (4th Cir. Nov. 12, 1986) (per curiam).

Shortly after enactment of the Prison Litigation Reform Act (PLRA) on April 26, 1996, the State filed a motion to terminate the consent decree pursuant to 18 U.S.C.A. § 3626(b)(2). The Inmates opposed the motion, asserting that § 3626(b)(2) did not require termination of the consent decree and, alternatively, that if termination of the consent decree was required, the statutory provision was unconstitutional. The district court rejected these arguments and granted the motion to terminate, leading to this appeal.[1]

II.

The PLRA is intended to "provid[e] reasonable limits on the remedies available in" lawsuits concerning prison conditions. <u>See</u> H.R. Rep. No. 21, 104th Cong., 1st Sess. 7 (1995). It accomplishes this goal, in part, by providing that "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs." 18 U.S.C.A. § 3626(a)(1)(A); <u>see also</u> H.R. Rep. No. 21, at 24 n.2 (noting that this "provision stops judges from imposing remedies intended to effect an overall modernization of local prison systems or provide an overall improvement in prison conditions" by "limit[ing] remedies to those necessary to remedy the proven violation of federal rights"). The PLRA also provides an avenue for states to end their obligations under consent decrees providing for greater prospective relief than that required by federal law:

IMMEDIATE TERMINATION OF PROSPECTIVE RE-

_____

[1] The Inmates' position with respect to the constitutionality of § 3626(b)(2) is supported by a joint brief of amici curiae filed by the Legal Aid Society of the City of New York, the Youth Law Center, Human Rights Watch, and the National Women's Law Center. The United States, which has intervened in the appeal pursuant to 28 U.S.C.A. § 2403(a) (West 1994) (permitting the United States to intervene in any action in which the constitutionality of an act of Congress affecting the public interest is questioned), has filed a brief arguing that § 3626(b)(2) passes constitutional muster.

LIEF.--In any civil action with respect to prison conditions, a defendant or intervener shall be entitled to the immediate termination of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

18 U.S.C.A. § 3626(b)(2). However, a court is prohibited from terminating prospective relief if it determines that "prospective relief remains necessary to correct a current or ongoing violation of the Federal right." 18 U.S.C.A. § 3626(b)(3). A state may seek termination of prospective relief under § 3626(b)(2) even if the relief was approved before enactment of the PLRA. Prison Litigation Reform Act, Pub. L. No. 104-134, § 802(b)(1), 110 Stat. 1321, 1321-70 (1996) (to be codified at 18 U.S.C.A. § 3626 (note)).

III.

The Inmates first maintain that the district court improperly construed § 3626(b)(2) to require termination of the consent decree to the extent that it provided for prospective relief greater than that necessary to correct a violation of a federal right. The Inmates urge us, instead, to construe the term "Federal right" to include rights conferred by consent decrees. See Gates v. Gomez , No. 9-87-1536 (E.D. Cal. July 22, 1996) (denying a motion for termination of an order entered pursuant to a previously approved consent decree on the basis that approval of the consent decree created a federal right, so that the subsequent order constituted a determination that the defendant had violated the plaintiffs' federal rights, thereby satisfying the requirements for prospective relief under § 3626(a)(1)(A)). The Inmates maintain that such a construction of § 3626(b)(2) would render termination of the consent decree unnecessary, thereby obviating the need to consider the constitutional issues presented by this appeal. See Crowell v. Benson, 285 U.S. 22, 62 (1932) (noting the duty of this court to construe a statute in a manner that avoids constitutional questions whenever such a construction is "fairly possible").

The Inmates would have us construe the term "Federal right" to include prospective relief contained in a consent decree. Under the

5

Inmates' proposed interpretation of the term "Federal right," § 3626(b)(2) would provide that the district court is required to terminate prospective relief if it was approved in the absence of a finding "that the relief is narrowly drawn, extends no further than necessary to correct the violation of the [prospective relief], and is the least intrusive means necessary to correct the violation of the [prospective relief]." Obviously, such a reading renders the provision nonsensical because under it, the district court would never be able to terminate a consent decree. Consequently, the Inmates' proposed reading of the statute is at odds with Congress' purpose in enacting the PLRA, namely, to relieve states of the onerous burden of complying with consent decrees that often reach far beyond the dictates of federal law. See H.R. Rep. No. 21, at 8-9. Our duty to construe statutes so as to avoid constitutional problems does not require us to adopt a construction that renders the statute meaningless or nonsensical, see Plaut v. Spendthrift Farm, Inc., 115 S. Ct. 1447, 1452 (1995), nor does it require us to interpret a statute in a manner clearly contrary to congressional intent, see Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council, 485 U.S. 568, 575 (1988). Accordingly, we conclude that the term "Federal right" as used in § 3626(b)(2) does not include rights conferred by consent decrees providing relief greater than that required by federal law. Thus, having determined that a construction of the statute by which constitutional issues might be avoided is not reasonably possible, we now turn to consider the Inmates' constitutional challenges to the statute.

IV.

The Inmates next contend that § 3626(b)(2) offends the doctrine of separation of powers. Although the separation-of-powers doctrine is not explicitly stated in the Constitution, it nevertheless is deeply rooted in our jurisprudence. See National Mut. Ins. Co. v. Tidewater Transfer Co., 337 U.S. 582, 590-91 (1949) (Jackson, J.). As the Supreme Court has noted, the separation of powers "is not merely a matter of convenience . . . . Its object is basic and vital, namely, to preclude a commingling of these essentially different powers of government in the same hands." O'Donoghue v. United States, 289 U.S. 516, 530 (1933) (citation omitted); see also Sinking-Fund Cases, 99 U.S. 700, 718 (1878) (noting that "[t]he safety of our institutions depends in no small degree on a strict observance of th[e] salutary

rule" that "[o]ne branch of the government cannot encroach on the domain of another without danger"). Thus, the separation-of-powers doctrine "is a prophylactic device, establishing high walls and clear distinctions because low walls and vague distinctions will not be judicially defensible in the heat of interbranch conflict." Plaut, 115 S. Ct. at 1463.

The Inmates argue that § 3626(b)(2) violates the separation-of-powers doctrine in two ways. First, the Inmates assert that § 3626(b)(2) requires courts to reopen judgments that have long since become final, thereby violating the rule that Congress may not interfere with the final judgments of Article III courts. See Plaut, 115 S. Ct. at 1453. The Inmates also argue that § 3626(b)(2) mandates the result in particular cases without changing the applicable law, another violation of the separation-of-powers doctrine. See United States v. Klein, 80 U.S. (13 Wall.) 128, 146-47 (1871). Neither of these contentions is persuasive.

A.

The Inmates first maintain that § 3626(b)(2) requires the court to reopen a final judgment in violation of the separation-of-powers principles recently enunciated in Plaut. See Plaut, 115 S. Ct. at 1453. In Plaut, the Court declared 15 U.S.C.A. § 78aa-1(b) (West Supp. 1996), unconstitutional as a violation of the separation-of-powers doctrine. Plaut, 115 S. Ct. at 1453. Section 78aa-1(b) required courts to reopen securities fraud cases that had been dismissed on statute-of-limitations grounds following the decision of the Court in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350 (1991) (adopting uniform limitations period for civil actions under§ 10(b) of the Securities Exchange Act), regardless of the fact that the cases were no longer pending on direct review. Plaut, 115 S. Ct. at 1451. Noting that Article III "gives the Federal Judiciary the power, not merely to rule on cases, but to decide them, subject to review only by superior courts in the Article III hierarchy," the Court concluded that § 78aa-1(b) violated the separation-of-powers doctrine by interfering with the "judicial Power . . . to render dispositive judgments." Id. at 1453 (internal quotation marks omitted). The Inmates argue that § 3626(b)(2) is unconstitutional under Plaut because it mandates the

7

reopening of final judgments by requiring district courts to terminate consent decrees that were approved before the passage of the PLRA.

The Inmates' argument fails because the consent decree at issue here was not a final judgment for separation-of-powers purposes. Of course, a judgment at law is immune to subsequent changes in the law. See Pennsylvania v. Wheeling & Belmont Bridge Co., 59 U.S. (18 How.) 421, 431 (1855) (noting that a judgment for damages is "beyond the reach of the power of congress"). Thus, as made clear by the Court in Plaut, an attempt to alter legislatively a legal judgment violates the separation-of-powers doctrine. A judgment providing for injunctive relief, however, remains subject to subsequent changes in the law. See System Fed'n No. 91 v. Wright, 364 U.S. 642, 651-52 (1961); Wheeling & Belmont Bridge Co., 59 U.S. (18 How.) at 431-32;[2] see also Rufo v. Inmates of Suffolk County Jail, 502 U.S. 367, 379 (1992) (noting distinction between "`restraints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change, and those that involve the supervision of changing conduct or conditions and are thus provisional and tentative'") (quoting United States v. Swift & Co., 286 U.S. 106, 114 (1932)). These principles apply equally to consent decrees and litigated judgments. See System Fed'n No. 91, 364 U.S. at 650-51; Rufo, 502 U.S. at 379-80.

As the Inmates readily acknowledge, the consent decree at issue here provides for prospective relief and is subject to the continuing supervisory jurisdiction of the district court. As such, the judgment approving the decree is not similar to a judgment for money damages. Rather, it is akin to a final judgment granting injunctive relief, and thus it is subject to subsequent changes in the law. See Rufo, 502 U.S. at 388 ("A consent decree must of course be modified if, as it later turns out, one or more of the obligations placed upon the parties has become impermissible under federal law.").[3] Accordingly, we con-

_____

[2] Indeed, the Court noted in Plaut that "nothing in our holding today calls . . . into question" the decision in Wheeling & Belmont Bridge Co. Plaut, 115 S. Ct. at 1459.

[3] Indeed, the consent decree recognizes this principle by providing that "[a]ny disputed petition for modification shall be reviewed by the Court under the applicable law pertaining to modification of Consent Decrees." J.A. 85.

8

clude that § 3626(b)(2) does not mandate the reopening of final judgments in violation of the separation-of-powers doctrine.

B.

The Inmates also maintain that § 3626(b)(2) violates the separation-of-powers doctrine by prescribing a rule of decision without changing the underlying law. See Klein, 80 U.S. (13 Wall.) at 146-47. In Klein, the Court considered the constitutionality of legislation providing that a presidential pardon constituted conclusive evidence that the pardoned individual had been disloyal to the United States. Id. at 143-44. The act also provided that a pardon could not be used as evidence of loyalty in a suit to recover confiscated property and directed the Court to dismiss all cases pending on appeal in which property or proceeds had been recovered based on a pardon. Id. The Court declared the statute unconstitutional because it amounted to an attempt to prescribe a rule of decision for pending cases in violation of the separation-of-powers doctrine. Id. at 147. Relying on Klein, the Inmates assert that § 3626(b)(2) mandates a rule of decision by requiring a district court to terminate a consent decree upon determining that the decree grants relief greater than that required by federal law.

While the Court has never determined the precise scope of Klein, at the very least it is clear that Congress does not mandate a rule of decision when it amends the law underlying a pending case. See Plaut, 115 S. Ct. at 1452-53; see also Robertson v. Seattle Audubon Soc'y, 503 U.S. 429, 441 (1992) (declining to decide whether an act of Congress was unconstitutional under Klein because the act amended applicable law). The Inmates maintain that this principle does not save the PLRA because § 3626(b)(2) does not change the applicable law, namely, the Eighth Amendment. Since Congress lacks power to change the Eighth Amendment, or in any event has not done so here, the Inmates argue, § 3626(b)(2) is unconstitutional under Klein.

The Inmates fail to understand that the applicable law is not the Eighth Amendment, but rather is the authority of the district court to award relief greater than that required by federal law. The consent decree approved by the district court indisputably provides for pro-

9

spective relief greater than that required by the Eighth Amendment. See Plyler v. Evatt, 924 F.2d 1321, 1327 (4th Cir. 1991). That being the case, it is the authority of the district court to approve relief greater than that required by the Eighth Amendment, not the Eighth Amendment itself, that is at stake. In enacting the PLRA, Congress has deprived district courts of this authority, and in so doing has unquestionably amended the law applicable to this case.

Moreover, even if § 3626(b)(2) did not amend the applicable law, the Inmates would be unable to persuade us that it mandates a rule of decision. While § 3626(b)(2) requires a district court to terminate prospective relief that was approved in the absence of a finding that the relief is no greater than necessary to correct the violation of a federal right, it does not purport to state how much relief is more than necessary. In short, § 3626(b)(2) provides only the standard to which district courts must adhere, not the result they must reach. Accordingly, because § 3626(b)(2) amends the applicable law and does not dictate a rule of decision, we conclude that it is not unconstitutional under Klein.

V.

The Inmates further argue that § 3626(b)(2) violates the equal protection principles encompassed by the Fifth Amendment. See Mathews v. De Castro, 429 U.S. 181, 182 n.1 (1976) (explaining that the Due Process Clause of the Fifth Amendment "encompasses equal protection principles"). In considering an equal protection challenge, we generally will presume the legislation at issue to be valid and will uphold the statute if the classification it draws is rationally related to a legitimate purpose. See City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440 (1985). If, however, the statute employs a suspect class or burdens the exercise of a constitutional right, we exercise strict scrutiny review, upholding the statute only if it is narrowly tailored to serve a compelling state interest. Id. Here, the Inmates argue that § 3626(b)(2) singles out the class of prison inmates and burdens their fundamental right of access to the courts. [4] Accordingly, the Inmates claim, the provision is subject to strict scrutiny.

_____

**4** Inmates do not contend that they are members of a suspect class. See Moss v. Clark, 886 F.2d 686, 689-90 (4th Cir. 1989).

10

The Inmates are correct, of course, that the right of access to the courts is fundamental, see Wolff v. McDonnell , 418 U.S. 539, 578-79 (1974), and that burdens upon that right therefore must survive the most exacting constitutional review, see City of Cleburne, 473 U.S. at 440. However, by its terms § 3626(b)(2) neither prohibits prisoners from filing civil suits challenging the conditions of their confinement nor impedes their ability to do so.**5** Undeterred, the Inmates maintain that they possess a fundamental right "to enforce the successful result" of a civil suit, Appellants' Br. 32, and argue that § 3626(b)(2) burdens that right by prohibiting them from enforcing the terms of the consent decree.

We are unpersuaded. The right of access to the courts is the "right to bring to court a grievance that the inmate wished to present," and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." Lewis v. Casey, 116 S. Ct. 2174, 2180-81 (1996). We have little trouble accepting the proposition that the right of access to the courts necessarily includes the right to enforce a judgment once it is obtained. But, § 3626(b)(2) does not burden this right; it merely limits the substantive relief to which the Inmates are entitled. Simply put, the Inmates have confused the right of access to the courts with the scope of the available substantive relief. Under the PLRA, the Inmates remain free to bring civil rights actions challenging the constitutionality of conditions in South Carolina prisons and are entitled to enforce judgments rendered on those claims. The limitation imposed by § 3626(b)(2) on the relief available in such suits does nothing to burden this right. Accordingly, we conclude that § 3626(b)(2) does not burden a fundamental right and hence is subject only to rational-basis review. See FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993).

Legislation that neither employs a suspect class nor burdens a fundamental right "is accorded a strong presumption of validity," Heller v. Doe, 509 U.S. 312, 319 (1993), and "must be upheld against equal protection challenge if there is any reasonably conceivable state of

_____

**5** In making this statement, we note that other provisions of the PLRA impose certain limitations upon prisoners' ability to pursue civil rights claims. Those provisions are not before us in this appeal, and accordingly we do not consider whether they burden the right of access to the courts.

11

facts that could provide a rational basis for the classification," <u>Beach Communications, Inc.</u>, 508 U.S. at 313. Moreover, the burden rests on the one challenging the legislation to disprove the existence of "every conceivable basis which might support it." <u>Lehnhausen v. Lake Shore Auto Parts Co.</u>, 410 U.S. 356, 364 (1973) (internal quotation marks omitted). Rational basis review is thus "a paradigm of judicial restraint," <u>Beach Communications, Inc.</u>, 508 U.S. at 314, prohibiting us from "sit[ting] as a superlegislature to judge the wisdom or desirability of legislative policy determinations" underlying the legislation, <u>City of New Orleans v. Dukes</u>, 427 U.S. 297, 303 (1976) (per curiam). Once we have determined that there exists a plausible reason for the congressional action--and regardless of whether that reasoning actually motivated Congress--our inquiry is at an end. <u>United States R.R. Retirement Bd. v. Fritz</u>, 449 U.S. 166, 179 (1980).

The Inmates concede, and we agree, that Congress has a legitimate interest in preserving state sovereignty by protecting states from overzealous supervision by the federal courts in the area of prison conditions litigation. Moreover, § 3626(b)(2) is an eminently rational means of accomplishing this congressional purpose. Section 3626(b)(2) addresses the problem of overbearing court supervision by forbidding courts to intrude to any degree greater than that required by federal law. Whether Congress has made a wise choice is beyond our purview; our concern is only whether the method employed is rationally related to a legitimate purpose. Section 3626(b)(2) satisfies this standard.

VI.

The Inmates' final challenge to the constitutionality of § 3626(b)(2) consists of an assertion that the provision violates the Due Process Clause of the Fifth Amendment. <u>See</u> U.S. Const. amend. V ("No person shall be . . . deprived of life, liberty, or property, without due process of law . . . ."). The Inmates raise two due process challenges, which we address seriatim.

A.

The Inmates claim that § 3626(b)(2) violates the Due Process Clause of the Fifth Amendment in that it deprives them of a property

12

interest--the rights afforded by the consent decree--without due process of law. Due process includes both procedural and substantive components. See Love v. Pepersack, 47 F.3d 120, 122 (4th Cir.), cert. denied, 116 S. Ct. 64 (1995). In order to prevail on a procedural due process claim, the Inmates must show that they have a property interest in the consent decree of which they have been deprived without due process of law. See Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 826 (4th Cir. 1995). Substantive due process is far narrower in scope than procedural due process, see Love , 47 F.3d at 122, and requires the Inmates to show not only that they have been deprived of a property interest, but also that the action causing the deprivation "falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency," Sylvia Dev. Corp., 48 F.3d at 827. The Inmates have not troubled themselves to specify whether their due process claim is procedural or substantive in nature, but in the end it makes no difference because both tests require a showing that the Inmates cannot make--that they have a property interest in the rights conferred by the consent decree.

The Inmates' assertion of a property right in the consent decree rests on the vested-rights doctrine, which provides that "[i]t is not within the power of a legislature to take away rights which have been once vested by a judgment." McCullough v. Virginia, 172 U.S. 102, 123 (1898). The vested-rights doctrine is analogous to the separation-of-powers rule that Congress may not mandate the reopening of final judgments; importantly, both rules apply only when a final judgment has been rendered. See Axel Johnson Inc. v. Arthur Andersen & Co., 6 F.3d 78, 83-84 (2d Cir. 1993). And, just as a judgment approving prospective relief is not a final judgment for purposes of the separation-of-powers analysis, neither is it a final judgment for purposes of the vested-rights doctrine. See Fleming v. Rhodes, 331 U.S. 100, 107 (1947) (holding that "[f]ederal regulation of future action based upon rights previously acquired . . . is not prohibited by the Constitution"); cf. Landgraf v. USI Film Prods., 511 U.S. 244, 274 (1994) (noting that an injunction "operates in futuro" and that a plaintiff has no vested rights in an injunctive decree) (internal quotation marks omitted). Accordingly, we conclude that the Inmates had no property right in the continued enforcement of a decree granting prospective relief.

13

B.

The Inmates next raise a due process challenge to § 3626(b)(2) on the basis that it operates retroactively. The Inmates rely on the rule set forth in Pension Benefit Guaranty Corp. v. R.A. Gray & Co., 467 U.S. 717 (1984), that retroactive application of legislation must pass a due process test not required for legislation having only future effects, namely, "that the retroactive application of the legislation [must be] justified by a rational legislative purpose." Id. at 730 (citing Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 16-17 (1976)). The Inmates assert that, regardless of whether the prospective application of § 3626(b)(2) passes constitutional muster, there is no rational legislative purpose justifying the retroactive application of § 3626(b)(2).

The simple response to this argument is found in Landgraf, in which the Court noted the well-settled principle that "[w]hen the . . . statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." Landgraf, 511 U.S. at 273 (citing American Steel Foundries v. Tri City Cent. Trades Council, 257 U.S. 184, 201 (1921)). That is precisely the case here.

VII.

In sum, we hold that 18 U.S.C.A. § 3626(b)(2), as amended by the PLRA, offends neither the separation-of-powers doctrine, Fifth Amendment equal protection principles, nor the Due Process Clause of the Fifth Amendment. We also hold that the term "Federal right" as used in § 3626(b)(2) does not include rights conferred by consent decrees to the extent those rights rise above the requirements of federal law. Accordingly, we affirm the order of the district court terminating the consent decree.

AFFIRMED

14